# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-1347
Lower Tribunal No. 2019-SC-034548-O

_____

PROGRESSIVE SPECIALTY INSURANCE COMPANY,

Appellant,

v.

FLORIDA HOSPITAL OCALA, INC. d/b/a ADVENTHEALTH OCALA a/a/o SANDRA THOMAS,

Appellee.

_____

Appeal from the County Court for Orange County.
Brian S. Sandor, Judge.

October 14, 2024

GANNAM, J.

Progressive Specialty Insurance Company appeals the entry of summary judgment for Florida Hospital Ocala, Inc., as assignee of Sandra Thomas.[1] Because the out-of-state coverage provision of Thomas's Maryland car insurance policy does not increase the policy's $2,500 PIP coverage limit to conform to Florida PIP requirements, Progressive is not liable for payment of PIP benefits to Florida

---

[1] This case was transferred from the Fifth District Court of Appeal to this Court on January 1, 2023.

Hospital beyond the $2,500 Progressive already paid. Accordingly, we reverse the judgment and remand for entry of judgment for Progressive.

I.

A.

In July 2018, Thomas purchased a Maryland car insurance policy from Progressive. At the time, Thomas resided and garaged her car in Maryland. The policy provides $2,500 in PIP benefits in addition to other coverages. The policy begins with a declarations page summarizing the limits of her coverages, including the following limits pertinent to this appeal:

| | Limits |
|---|---|
| Liability To Others | |
| Bodily Injury Liability | $30,000 each person/$60,000 each accident |
| Property Damage Liability | $15,000 each accident |
| Personal Injury Protection | $2,500 |

The substantive coverage provisions of the policy track the coverage categories shown on the declarations page. "PART I—LIABILITY TO OTHERS" obligates Progressive to pay damages "for bodily injury and property damage for which an insured person becomes legally responsible because of an accident." "PART II—PERSONAL INJURY PROTECTION COVERAGE" obligates Progressive to pay "the reasonable and necessary covered expenses incurred because

2

of bodily injury . . . sustained by an insured person . . . arising from a motor vehicle accident."

Part I of the policy also includes an "OUT-OF-STATE COVERAGE" provision, which potentially increases certain coverages by conforming the policy to the requirements of other states' laws:

> If an accident to which this Part I applies occurs in any state . . . other than the one in which a covered auto is principally garaged, and the state . . . has:
> 1. a financial responsibility or similar law requiring limits of liability for bodily injury or property damage higher than the limits shown on the declarations page, this policy will provide the higher limits; or
> 2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an auto in that state . . . this policy will provide the greater of:
>    a. the required minimum amounts and types of coverage; or
>    b. the limits of liability under this policy.

## B.

In October 2018, Thomas began working and residing in Ocala, Florida. Around eight months later, in July 2019, Thomas was injured in an accident while driving her car in Florida and received medical treatment from Florida Hospital. Thomas assigned her PIP insurance benefits to Florida Hospital, and Florida Hospital billed Progressive $8,870.71 for her treatment. Progressive paid Florida Hospital $2,377.72, and paid another medical provider $122.28, for a total of $2,500.

3

Florida Hospital sent Progressive a presuit demand letter seeking the balance of the amount it billed for Thomas's treatment, but Progressive responded that the policy's $2,500 in PIP benefits had been exhausted.

In October 2019, Florida Hospital, as Thomas's assignee, sued Progressive for breach of contract. Relevant to this appeal, Progressive's answer to Florida Hospital's complaint alleged in defense that Thomas failed to comply with the PIP coverage requirements of the Florida Motor Vehicle No-Fault Law, sections 627.730–627.7405, Florida Statutes, and that Progressive had fully satisfied its contractual obligation to Thomas by exhausting the Maryland policy's $2,500 in PIP benefits coverage.

Florida Hospital moved for summary judgment, claiming that the Maryland policy's out-of-state coverage provision increased the PIP coverage to $10,000 to conform the policy to the requirements of the Florida No-Fault Law. Progressive countered with its own summary judgment motion asserting several grounds, including its contractual defense that it had exhausted the PIP benefits due Thomas and its defense that Thomas failed to obtain a Florida insurance policy providing the PIP benefits required by the No-Fault Law, making Thomas alone liable for those benefits. The trial court denied Progressive's summary judgment motion, concluding Progressive's defenses failed as a matter of law. But the court granted Florida Hospital's summary judgment motion and entered judgment against Progressive for

4

$2,944.71.[2] On appeal, Progressive asks us to reverse the judgment and remand with instructions to enter judgment against Florida Hospital.

## II.

## A.

Because only legal issues are presented, our review of the order granting summary judgment is de novo. *See Fiddlesticks Country Club, Inc. v. Shaw*, 363 So. 3d 1177, 1181 (Fla. 6th DCA 2023). The primary question on appeal is whether the out-of-state coverage provision of Thomas's Maryland insurance policy conformed the policy to Florida coverage requirements, thereby increasing Thomas's PIP coverage from $2,500 to $10,000, and obligating Progressive to pay Florida Hospital for her medical expenses beyond the $2,500 Progressive already paid. Answering this question requires not only interpretation of the insurance policy, but also interpretation of several lengthy and interconnected Florida statutes on car registration and insurance.[3] This is because the conformity clauses of the Maryland out-of-state coverage provision depend on what Florida law says about nonresidents

---

[2] This is the amount claimed by Florida Hospital in its summary judgment motion, representing eighty percent of seventy-five percent of the $8,870.71 billed to Progressive, less Progressive's payment of $2,377.72. *See* § 627.736(5)(a)1.b., Fla. Stat. (2019) ("The insurer may limit reimbursement to 80 percent of . . . 75 percent of the hospital's usual and customary charges.").

[3] "Fear not, keep reading." *Shiloh Christian Ctr. v. Aspen Specialty Ins. Co.*, 65 F.4th 623, 624 (11th Cir. 2023).

and PIP insurance, which in turn depends on what Florida law says about nonresidents and car registration (with one exception).

In interpreting legal texts, Florida courts "follow the supremacy-of-text principle—namely, the principle that the words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (cleaned up) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). Thus, we interpret both insurance contracts and statutes according to the plain meaning of their text, *Allstate Ins. Co. v. Revival Chiropractic, LLC*, 385 So. 3d 107, 113 (Fla. 2024), looking to "all the textual and structural clues that bear on the meaning of a disputed text" and using the traditional interpretive canons for guidance where helpful, *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (cleaned up). The texts at issue here, though some loom large in the statute books, are not so complex on examination. Their plain meaning tells us what we need to know.

B.

Many legal obligations arise from owning and driving a car in Florida, including satisfaction of registration and insurance requirements. We begin with registration. The general requirement is that "every owner or person in charge of a motor vehicle that is operated or driven on the roads of this state shall register the

6

vehicle in this state." § 320.02(1), Fla. Stat. (2019).[4] But nonresident[5] car owners who drive their cars in Florida are generally exempt from registration:

> The provisions of this chapter . . . do not apply to a motor vehicle owned by a nonresident of this state if the owner thereof has complied with the provisions of the motor vehicle registration or licensing law of the . . . state . . . of the owner's residence . . . .

§ 320.37(1), Fla. Stat. (2019). Thus, nonresident visitors who drive their cars in the state do not immediately become subject to Florida car registration requirements. But a nonresident car owner who works in Florida or enrolls a child in a Florida public school loses the nonresident exemption and must register any car used in Florida. § 320.38, Fla. Stat. (2019). If the nonresident's Florida work is temporary, only temporary registration is required, for up to 180 days. § 320.1325, Fla. Stat. (2019). After the 180-day temporary registration period, full registration is required for continued work in Florida. *Id.*

## C.

The obligation to register a car in Florida carries with it the obligation to obtain PIP and liability insurance coverages under two separate but related statutory

---

[4] Our statutory analysis is based on the Florida Statutes in effect at the time of the 2019 accident.

[5] For purposes of the registration statutes, a Florida "resident" includes "a person who has his or her principal place of domicile in this state for a period of more than 6 consecutive months," and a "nonresident" is "a person who is not a resident." §§ 320.01(34), (35), Fla. Stat. (2019).

schemes: the Florida Motor Vehicle No-Fault Law, sections 627.730–627.7405, Florida Statutes, requiring PIP insurance, and the Financial Responsibility Law of 1955, chapter 324, Florida Statutes, requiring liability insurance. Registration cannot be obtained without proof of both. § 320.02(5)(a), Fla. Stat. (2019). We examine the requirements of the Financial Responsibility Law first.

The primary purpose of the Financial Responsibility Law is "to promote safety and provide financial security requirements" for Florida drivers "whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle." § 324.011, Fla. Stat. (2019). The essential obligation of the Financial Responsibility Law is to "establish and maintain the ability to respond in damages for liability . . . in the amount of $10,000 because of damage to, or destruction of, property of others in any one crash." § 324.022(1), Fla. Stat. (2019). The obligation arises for "[e]very owner . . . of a motor vehicle required to be registered in this state."[6] *Id.* The $10,000 responsibility requirement may be satisfied "by maintaining an insurance policy providing coverage for property

---

[6] Section 324.022 was added in 1988 and took effect October 1, 1989. Ch. 88–370, § 8, Laws of Fla. Prior to its enactment, the "Financial Responsibility Law, like that of many other states, require[d] compliance only after an owner or operator of a motor vehicle [was] involved in an accident." *Williams v. Newton*, 236 So. 2d 98, 99–100 (Fla. 1970) (footnote omitted); *see also Grant v. N.H. Ins. Co.*, 613 So. 2d 466, 471 n.4 (Fla. 1993).

damage liability in the amount of at least $10,000 . . . in any one accident arising out of the use of the motor vehicle." § 324.022(1), Fla. Stat. (2019).[7]

Next are PIP coverage requirements under the Florida Motor Vehicle No-Fault Law. The primary purposes of the No-Fault Law are to provide for a driver's PIP benefits—i.e., "medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits." § 627.731, Fla. Stat. (2019). The No-Fault Law requires "[e]very owner or registrant of a motor vehicle . . . required to be registered and licensed in this state [to] maintain security," § 627.733(1), Fla. Stat. (2019), "[b]y an insurance policy delivered or issued for delivery in this state." § 627.733(3), Fla. Stat. (2019).[8] The insurance policy must provide "personal injury protection to the named insured . . . to a limit of $10,000 in medical and disability benefits . . . resulting from bodily injury . . . arising out of the ownership, maintenance, or use of a motor vehicle."

---

[7] For individual, private car owners, section 324.022(1) also allows satisfaction of the responsibility requirement "by having a policy which provides coverage in the amount of at least $30,000 for combined property damage liability and bodily injury liability" per accident; by a Florida insurance policy providing $10,000 per accident in property damage liability coverage plus $10,000 per accident in bodily injury liability coverage for one person and $20,000 per accident in bodily injury liability coverage for two or more persons (incorporating §§ 324.031(1), 324.021(8), and 324.021(7), Fla. Stat. (2019)); or by having "a certificate of self-insurance issued by the [Department of Highway Safety and Motor Vehicles]" upon showing "a net unencumbered worth of at least $40,000" (incorporating §§ 324.031(3) and 324.171, Fla. Stat. (2019)).

[8] The security requirement may also be satisfied by self-insurance meeting statutory requirements. *See* § 627.733(3), Fla. Stat. (2019).

§ 627.736(1), Fla. Stat. (2019). A car owner obligated to maintain the $10,000 in PIP benefits who fails to have the coverage in effect at the time of an accident is both "personally liable for payment of [the] benefits" and, "[w]ith respect to such benefits," deemed to have "all of the rights and obligations of an insurer under [the No-Fault Law]." § 627.733(4), Fla. Stat. (2019).[9]

D.

There is an additional circumstance obligating a Florida nonresident to comply with the Financial Responsibility Law and the No-Fault Law, irrespective of car registration. The requirements of both laws are also triggered by the cumulative presence of a nonresident's car in Florida over the course of a year, even if registration is not required. They have identical provisions requiring coverage for any car that "has been physically present within this state for more than 90 days during the preceding 365 days." §§ 324.022(3), 627.733(2), Fla. Stat. (2019). Thus, a nonresident car owner becomes subject to the requirements of both the Financial Responsibility Law and the No-Fault Law either upon working in Florida or enrolling a child in a Florida public school, based on registration requirements, or upon having a car in the state for more than ninety of the preceding 365 days, irrespective of registration requirements.

---

[9] A car owner who fails to maintain the required security also loses certain tort liability immunities that would otherwise be available under section 627.737. *See* § 627.733(4), Fla. Stat. (2019).

10

III.

A.

Having reviewed the obligations of Florida's Financial Responsibility and No-Fault Laws, we return to the primary issue on appeal: whether the out-of-state coverage provision of Thomas's Maryland insurance policy applies. The plain language of the provision makes its application conditional, depending first on the occurrence of "an accident to which . . . Part I applies," and second on the covered accident's "occur[ing] in any state . . . other than the one in which a covered auto is principally garaged." (*See* pt. I.A, *supra*.) If those threshold conditions are satisfied, then the increased coverages of the two conformity clauses depend on the laws of the state where the accident occurred. ("If . . . the state . . . has . . . a financial responsibility or similar law . . . or . . . a compulsory insurance or similar law . . . .")

The first threshold condition is the occurrence of an accident to which Part I of the policy applies. The "INSURING AGREEMENT" provision of Part I states that Progressive "will pay damages . . . for bodily injury and property damage for which an insured person becomes legally responsible because of an accident." Thus, by its plain language, Part I applies to any accident resulting in the insured's becoming liable for damages to another, for bodily injury or property damage. The claim at issue in this case, however, is for Thomas's expenses for her own injuries, and the record does not tell us whether anyone claims Thomas is liable to another

11

for damages from the accident. Thus, Florida Hospital failed to establish that Thomas's accident is an accident to which Part I applies and, therefore, failed to establish satisfaction of the first threshold condition of the out-of-state coverage provision.

Nor is it clear, on this record, whether the second threshold condition is satisfied—whether the accident occurred in a state "other than the one in which [Thomas's] auto is principally garaged." The policy declarations page shows Thomas's "Garaging Zip Code" to be in Maryland, but the record tells us that, at the time of the accident, Thomas had moved from Maryland to Florida and had been residing in Florida for over eight months. "PART VII—GENERAL PROVISIONS" of the Maryland policy imposes a duty on Thomas to report to Progressive all changes in "the principal garaging address of any covered auto" and, additionally, changes to her "residence address." The record does not show that Thomas notified Progressive of any such changes, despite her move to Florida. Progressive argued below and in its briefing here, based on the evidence that Thomas moved to Florida, that Thomas garaged her car in Florida too. But Progressive conceded at oral argument that the garaging location of her car was not specifically established on the record.

The failure of either threshold condition—an accident resulting in damages liability and its occurring in a state other than the garaging state—defeats the

12

increased coverages of the out-of-state coverage provision. So, even if Progressive did not establish the garaging of Thomas's car in Florida, Florida Hospital did not establish that Part I of the policy applied to Thomas's accident—i.e., that the accident resulted in damages liability to another, or even a claim of such liability. Thus, it was error for the trial court to conclude, as a matter of law, that the out-of-state coverage provision of the Maryland policy applied to Thomas's accident.

B.

We must inquire further, however, because Progressive asks us not only to reverse the grant of summary judgment for Florida Hospital, but also the denial of summary judgment for Progressive. Our deciding that the trial court erred in holding that the out-of-state coverage provision *did* apply leaves open the question of whether the provision *could* apply if the threshold conditions were satisfied. For Progressive to be entitled to summary judgment here, we must determine that the out-of-state coverage provision *could not* apply, as a matter of law, irrespective of the threshold conditions. This determination depends on whether the Florida car registration and insurance laws we examined above trigger one of the provision's conformity clauses.

There are two conformity clauses in the out-of-state coverage provision, but Florida Hospital relies only on the second, "compulsory insurance" clause to claim

13

Progressive is liable for increased PIP benefits.[10] The clause applies, by its plain language, if Florida has "a compulsory insurance or similar law requiring a non-resident to maintain insurance *whenever* the non-resident uses an auto in [the] state." (Emphasis added.) If so, the policy "will provide the greater of . . . the required minimum amounts and types of coverage; or . . . the limits of liability under [the] policy."

For purposes of our analysis, we interpret the language "compulsory insurance or similar law requiring a non-resident to maintain insurance" to include both the Financial Responsibility Law requiring liability insurance and the No-Fault Law requiring PIP insurance, both of which require nonresidents to maintain insurance under certain circumstances. *See generally Compulsory Insurance*, *Black's Law Dictionary* (11th ed. 2019) ("Statutorily required insurance; esp., motor-vehicle liability insurance that a state requires as a condition to register the vehicle."); *Lasky v. State Farm Ins. Co.*, 296 So. 2d 9, 14 (Fla. 1974) ("[I]nsurance coverage as to the

---

[10] The first conformity clause applies only to liability coverages: if Florida has "a financial responsibility or similar law requiring limits of liability for bodily injury or property damage higher than the limits shown on the declarations page," then the policy "will provide the higher limits." The declarations page shows limits of $30,000 per person and $60,000 per accident for bodily injury liability, and limits of $15,000 per accident for property damage liability (*see* pt. I.A, *supra*), which limits are higher than the limits required by Florida's Financial Responsibility Law ($10,000 per accident for property damage liability and no requirement for bodily injury liability—*see* part II.C, *supra*).

14

personal injury benefits provided by the no-fault insurance law is compulsory." (footnote omitted)).

As shown in part II.D, *supra*, a nonresident car owner becomes subject to the Financial Responsibility Law and the No-Fault Law upon taking work or enrolling a child in public school in Florida, because of Florida registration requirements, or upon having a car present in the state for more than ninety days out of the last 365. Neither law, however, requires a nonresident to maintain insurance "whenever" the nonresident uses a car in Florida. To be sure, a nonresident without work or a child in public school in Florida could use a car in Florida for up to three months, every year, without triggering either law's compulsory insurance coverage—liability or PIP. Thus, because the No-Fault Law does not require a nonresident to maintain PIP coverage "whenever" the nonresident uses a car in Florida, the conformity clause could not cause the policy's PIP coverage to conform to Florida's higher requirements as a matter of law, and the trial court should have granted summary judgment for Progressive instead of Florida Hospital.[11]

---

[11] Because the conformity clause is within the liability part of the policy, Progressive argues that "compulsory insurance or similar law" can only mean a compulsory *liability* insurance law, and that the clause's reference to "types of coverage" is limited to types of *liability* coverage—e.g., bodily injury and property damage. Florida Hospital counters that Progressive's interpretation is absurd and would make the clause superfluous because it could never conform the policy to Florida law if it excludes compulsory Florida PIP coverage. But neither argument is grounded in the text of the policy. While the out-of-state provision's placement in

C.

Florida Hospital argues that the trial court correctly relied on the Fifth District's decision in *Meyer v. Hutchinson*, 861 So. 2d 1185 (Fla. 5th DCA 2003), to hold the Maryland policy's out-of-state coverage provision requires Progressive to cover Florida Hospital's claim. But *Meyer* has no bearing on this case because the

the part of the policy titled "LIABILITY TO OTHERS" is a contextual indicator of its meaning, "a title or heading should never be allowed to override the plain words of a text." Scalia & Garner, *supra*, at 222. It is the text of the out-of-state provision, not its location, that limits applicability of the conformity clause to accidents implicating the insured's liability to another as a threshold condition. (And having the required PIP coverage in place at the time of an accident would provide an insured valuable tort *liability* immunities in addition to the PIP benefits—*see* note 9, *supra*.) But the text of the clause does not limit the meaning of "compulsory insurance or similar law" to compulsory liability insurance laws. The PIP insurance coverage requirements of the No-Fault Law are compulsory, and they apply to nonresidents under certain circumstances. To be sure, the No-Fault Law effectively incorporates the compulsory liability insurance requirements of the Financial Responsibility Law into a single requirement by requiring Florida car insurance policies providing the compulsory PIP coverage to also include the compulsory liability coverage. § 627.7275(1), Fla. Stat. (2019). *Cf.* 3 William J. Schermer & Irvin E. Schermer, *Auto. Liability Ins. 4th* § 46:2 (counting Florida among "[a] large minority of . . . states . . . enacting composite compulsory liability and no-fault laws providing for the incorporation of no-fault and liability insurance coverages into policies furnished as a condition of motor vehicle registration."). Given this practical merger of the No-Fault and Financial Responsibility Laws, it would be unnatural to read "compulsory insurance or similar law" to exclude the No-Fault Law. In any event, whether "compulsory insurance or similar law" encompasses the No-Fault Law, the Financial Responsibility Law, or both—a question we need not decide—it is the failure of the "whenever" condition of the conformity clause that prevents its application here. This interpretation of the text's plain meaning does not foreclose the applicability of the clause under another state's "compulsory insurance or similar law" and, thus, does not render the clause superfluous.

16

language of the out-of-state coverage provision interpreted in *Meyer* is materially different from the Maryland provision at issue in this case.

In *Meyer*, an at-fault driver (Meyer) claimed the out-of-state coverage provision of her Michigan car insurance policy conformed the policy's coverage to Florida's No-Fault requirements. 861 So. 2d at 1186. The Michigan provision stated, in pertinent part:

> If an insured is in another state or Canada and, as a non-resident, becomes subject to its motor vehicle compulsory insurance, financial responsibility, or similar law:
>
> > (a) this policy will be interpreted to give the coverage required by the law and
> >
> > (b) the coverage given replaces any coverage in this policy to the extent required by the law for the insured's operation, maintenance, or use of an owned automobile, a temporary substitute automobile, or a non-owned automobile.

*Id.* at 1186–87. The Fifth District concluded that "her policy specifically provides coverage required under any state's financial responsibility laws when the insured vehicle is being operated in that state." *Id.* at 1188.

The conditions to coverage under the out-of-state provision in the *Meyer* Michigan policy are materially different from the conditions to coverage in Thomas's Maryland out-of-state provision. The plain language of the Michigan out-of-state coverage provision in *Meyer* means that it applied only "*if* an insured is in another state . . . *and, as a non-resident, becomes subject to*" the state's compulsory

17

insurance laws. *Id.* at 1186–87 (cleaned up) (emphasis added). If this language applied here, we would only have to ask whether Thomas was in Florida and, as a nonresident, became subject to Florida's No-Fault law. But the Thomas–Maryland conformity clause at issue here requires us to ask more and different questions: whether Thomas was in an accident resulting in damages liability to another, whether the accident occurred in a state other than the state where her car was garaged, and whether a nonresident immediately becomes subject to the Florida No-Fault Law requirements upon using a car in Florida. The answer to the last question is no because, as we show above, a nonresident becomes subject to Florida's No-Fault Law by working or enrolling a child in public school in Florida or having a car in Florida for more than ninety of the last 365 days—not "whenever" the nonresident uses a car in Florida. (*See* pt. III.B, *supra*.) Thus, the *Meyer*–Michigan and Thomas–Maryland out-of-state coverage provisions pose materially different questions, and the *Meyer* court's answers are inapposite to ours.

The same can be said of *Jiminez v. Faccone*, 98 So. 3d 621 (Fla. 2d DCA 2012), and *Counts v. Altman Pollock & Daniels, Inc.*, No. 3:18-CV-1072-J-39JBT, 2020 WL 5534277 (M.D. Fla. Aug. 7, 2020), another two cases relied on by the trial court below and Florida Hospital on appeal. *Jiminez* interpreted an out-of-state coverage provision "virtually identical to the policy provision discussed by the Fifth District in *Meyer*," 98 So. 3d at 626, and is thus inapposite to our decision for the

18

same reason. *Counts* relied on both *Meyer* and *Jiminez*, though the out-of-state coverage language at issue in *Counts* was itself materially different from the language in *Meyer* and *Jiminez*, and materially different still from the Thomas–Maryland provision before us. *See* 2020 WL 5534277, at *3. Thus, *Counts* is likewise inapposite to our decision, and it was error for the trial court to rely on these cases below.

But *T.I.O. Medical Intervention v. Liberty Mutual Fire Insurance Co.*, 373 So. 3d 341 (Fla. 4th DCA 2023), released after completion of briefing in this case, interpreted out-of-state coverage language nearly identical to the "whenever" language used in the Thomas–Maryland policy before us. The Fourth District distinguished *Meyer* and *Jiminez*, finding "the policy language at issue here markedly different than the policy language interpreted by our sister districts in those cases." 373 So. 3d at 344. For the reasons above, we agree with the Fourth District's distinguishing *Meyer* and *Jiminez*, and with its holding that "Florida law does not require a nonresident to maintain coverage 'whenever' a nonresident operates a vehicle in our state." *Id.*

IV.

Progressive's contractual defense prevails. The Maryland policy's out-of-state coverage provision does not increase the policy's $2,500 PIP coverage limit to $10,000 to conform to the requirements of the Florida No-Fault Law. Thus,

Progressive satisfied its contractual obligation to Thomas by paying $2,500 in PIP benefits on her behalf, and Progressive has no further liability to Florida Hospital for PIP benefits under the policy. Accordingly, we reverse the summary judgment for Florida Hospital and remand with instructions to enter summary judgment for Progressive in accordance with this opinion.

REVERSED and REMANDED with instructions.

NARDELLA and BROWNLEE, JJ., concur.
GANNAM, J., concurs specially, with opinion.

Michael C. Clarke and Joye B. Walford, of Kubicki Draper, P.A., Tampa, for Appellant.

Chad A. Barr and Dalton L. Gray, of Law Office of Chad Barr, P.A., Altamonte Springs, for Appellee.

---

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF TIMELY FILED

---

GANNAM, J., specially concurring.

The court's opinion explains why Progressive prevailed on its contractual defense. I write separately to identify important questions that due process principles prohibited the court from answering in this case—questions raised by Progressive's alternative defense that Thomas is personally liable for the PIP benefits required by the No-Fault Law because she failed to obtain a Florida insurance policy providing the required PIP benefits. *See* § 627.733(3)(a), Fla. Stat. (2019) ("Such security shall

be provided . . . [b]y an insurance policy delivered or issued for delivery in this state . . . .”); § 627.733(4), Fla. Stat. (2019) (“An owner of a motor vehicle with respect to which security is required by this section who fails to have such security in effect at the time of an accident . . . shall be personally liable for the payment of benefits . . . . With respect to such benefits, such an owner shall have all of the rights and obligations of an insurer . . . .”). (*See also* Op. pt. II.C, *supra*.)

Whatever merit this defense may have had, we could not decide in this case whether Thomas is personally liable for any PIP benefits because Thomas was never before the trial court to have her PIP liabilities determined. Only Florida Hospital, as assignee of Thomas’s PIP *benefits*, was before the court, along with Progressive as Thomas’s PIP insurer. Thus, we could only decide liability as between Progressive and Florida Hospital.

Moreover, even if we could have decided that Thomas is liable for the required PIP benefits, that would not have answered the question of Progressive’s contractual liability for PIP benefits. While the No-Fault Law makes a noncompliant car owner personally liable for the required PIP benefits and an “insurer” of those benefits, the law does not specify that the car owner’s statutory liability is exclusive. Rather, the No-Fault Law provides that “[b]enefits due from an insurer under [the No-Fault Law] are primary.” § 627.736(4), Fla. Stat. (2019). Thus, if Thomas is liable, do her statutory “obligations of an insurer” make her the primary insurer of the required

21

PIP benefits, requiring her to pay the full amount before the Progressive coverage applies? Or, would Thomas and Progressive both be liable for PIP benefits, requiring a statutory apportionment of payments? *See* § 627.736(4)(f), Fla. Stat. (2019) ("If two or more insurers are liable for paying personal injury protection benefits for the same injury to any one person, the maximum payable is [$10,000], and the insurer paying the benefits is entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid and expenses incurred in processing the claim.") And how are these questions affected by Progressive's pleading in the trial court, and by Progressive's stating in its reply brief here that it "is not seeking a set-off in this case" and "does not contest Ms. Thomas's entitlement to the $2,500 in PIP coverage" under the Maryland policy?

Any such question bearing on an insured's personal liability for PIP benefits must be determined by the trial court in the first instance, with the insured properly joined in accordance with due process requirements. *Cf. Smith v. Chepolis*, 896 So. 2d 934, 937 (Fla. 1st DCA 2005) ("[T]he problem in this case is that Smith was not a party to the action, and he was not given notice that his personal liability was at issue in the case."). But such potential liability should be considered by an insured who has a car insurance policy that does not comply with the No-Fault Law and who assigns the policy's PIP benefits to a medical provider with the expectation of remaining a spectator to the ensuing litigation with the insurer.